IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 23-286 |
| | : | |
| AARON DOUGLAS | : | |

## MEMORANDUM

KEARNEY, J.                                                                 June 24, 2025

Aaron Douglas's admitted conduct led to criminal convictions in New Jersey and Pennsylvania over almost fourteen years. He most recently appeared before us in November 2023 with the benefit of experienced counsel to plead guilty to dealing in firearms without a license and possessing a firearm as a felon. We engaged in a fulsome colloquy confirming the voluntary and knowing nature of his plea. He agreed, as a condition of his plea, to not challenge or appeal his conviction or sentence for a reason other than later showing constitutionally ineffective assistance of his counsel. We sentenced Mr. Douglas to ninety months of custody followed by three years of supervised release in April 2024. He now pro se asks we vacate the sentence. He disregards his earlier knowing waiver of his challenges to the correct calculation of his Guidelines range. He also argues his counsel provided constitutionally ineffective assistance by not objecting to the demonstrably correct Guidelines calculation and by not arguing for us to apply a proposed amendment to the Guidelines not effective until six months later and not retroactive. His counsel could not so do consistent with her professional obligations to not proffer a baseless objection or argue for an inapplicable amendment. We deny Mr. Douglas's petition for habeas relief. We also find no basis for an evidentiary hearing or a certificate of appealability.

## I.    Background

A New Jersey court sentenced Aaron Douglas to eighteen months in custody in April 2012 arising from his guilty pleas after three separate arrests:

- New Jersey police officers arrested Aaron Douglas on August 15, 2011 for dealing drugs.[1] Mr. Douglas pleaded guilty to a charge of possession of drugs with intent to distribute for the August arrest in the Superior Court of New Jersey, Camden County on March 19, 2012;[2]

- New Jersey police officers again arrested Mr. Douglas on September 7, 2011 for dealing drugs.[3] Mr. Douglas pleaded guilty to a charge of conspiracy to possess with intent to distribute less than one ounce of marijuana for the September arrest in the Superior Court of New Jersey, Camden County on March 19, 2012;[4]

- New Jersey police officers arrested Mr. Douglas on October 31, 2011 for illegal possession of a handgun.[5] Mr. Douglas pleaded guilty to a charge of unlawful possession of a handgun for the October arrest in the Superior Court of New Jersey, Camden County on March 19, 2012.[6]

Mr. Douglas next faced criminal prosecution under federal law in this Court. Law enforcement arrested Mr. Douglas three years later leading him to plead guilty to a charge of possession of a firearm by a convicted felon on January 7, 2015 in this Court.[7] Our colleague the Honorable John R. Padova sentenced Mr. Douglas to a 48-month custodial sentence on April 9, 2015.[8]

The federal authorities released Mr. Douglas after he served his custodial sentence imposed by Judge Padova. But he returned to federal court a few years later. Our Grand Jury indicted Mr. Douglas on July 6, 2023 for illegally dealing and possessing firearms leading to a Federal Bureau of Investigation Special Weapons and Tactics team arresting him in Philadelphia on July 7, 2023.[9]

2

The Grand Jury charged Mr. Douglas for willfully dealing in firearms without a license and three counts of possession of a firearm by a felon.[10]

We appointed a federal defender. We set trial for September 11, 2023.[11] Mr. Douglas sought new counsel.[12] We appointed Susan Lin, Esquire of our Court's Criminal Justice Act Panel.[13] We continued trial to December 4, 2023 to allow substituted counsel time to prepare.[14]

Mr. Douglas pleaded guilty to all four counts before us in a change of plea hearing on November 28, 2023.[15] Mr. Douglas knowingly and voluntarily waived his right to challenge his conviction or sentence through an appeal, collateral attack, or other writ or motion arising under 18 U.S.C. section 3742, 28 U.S.C. section 1291, 28 U.S.C. section 2255, or any other provision.[16] He retained only his right to challenge his conviction or sentence due to constitutionally ineffective assistance of counsel.[17] We sentenced Mr. Douglas on April 23, 2024 to a total term of ninety months on each of his four counts to be served concurrently, three years of supervised release, and a $400 special assessment.[18]

## II.    Analysis

Mr. Douglas now asks we vacate his April 2024 sentence.[19] He argues (1) we erred by assigning criminal history points for the three 2011 state felonies because sentencing for all three occurred at the same time; (2) his attorney did not object to PSR issues and did not ask for a downward departure; and (3) his attorney should have raised Amendment 829 of Section 5H1.1 of the United States Sentencing Commission's Guidelines as a reason to depart from sentencing guidelines.[20] The United States responded to the petition at our request and argues Mr. Douglas waived his right to challenge our use of his PSR and he does not meet the high bar for ineffective assistance.[21]

3

We deny Mr. Douglas's petition. We find Mr. Douglas knowingly and voluntarily waived his right to bring any argument other than ineffective assistance of counsel, so he may not bring his first ground based on a Court error. And he does not meet the standard required to successfully plead constitutionally ineffective assistance of counsel as to his remaining grounds.

### A. Mr. Douglas waived his right to ask we vacate his conviction on the mistaken ground of court error.

Congress allows a federal prisoner to seek habeas relief from his federal sentence by moving to vacate, set aside, or correct his sentence in four circumstances: (1) the sentence imposed violates the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence is in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.[22] We construe a pro se petition liberally.[23] But we may only vacate a sentence if we find "judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack[.]"[24]

We review a habeas petition under section 2255 "much less favorably than a direct appeal of the sentence" mindful habeas is available only where "the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice, and . . . present[s] exceptional circumstances where the need for the remedy afforded by the writ . . . is apparent."[25] Collateral review under section 2255 "is not a substitute for direct review" and a petitioner "ordinarily may only raise claims in a 2255 motion that he raised on direct review."[26]

"A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution."[27] "Such waivers can include the waiver of the right to file a . . . [petition] to vacate, set aside or correct sentence under 28 U.S.C. § 2255 in a

4

plea agreement with the government."[28] Waivers of the right to collaterally attack criminal proceedings "do not contravene public policy and courts should strictly construe such waivers."[29] "In deciding whether to enforce [a] waiver, the Court must (1) determine whether it was 'knowing and voluntary' and (2) decide whether enforcing it would 'work a miscarriage of justice.'"[30] We have "an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure [ourselves] its enforcement works no miscarriage of justice, based on the record evidence before [us]."[31]

### 1.  Mr. Douglas knowingly and voluntarily waived this claim.

Mr. Douglas has not offered a reason to find his waiver unenforceable. But we have an independent obligation to assess. We must "review[] the terms of the plea agreement and change-of-plea colloquy and address[] their sufficiency."[32] The record confirms Mr. Douglas knowingly and voluntarily waived his right to now seek this same relief.

First, Mr. Douglas signed a written plea agreement agreeing "he will not file any appeal, any collateral attack, or any other writ or motion that challenges the defendant's conviction, sentence or any other matter relating to this prosecution, whether such an appeal, collateral attack, or other writ or motion arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law."[33] Mr. Douglas swore he read the plea agreement, discussed with his lawyer, and accepted the terms.[34] The terms of the agreement are sufficient and clear.

Second, the November 28, 2023 plea colloquy further demonstrates Mr. Douglas's knowledge and understanding of the plea agreement. We placed Mr. Douglas under oath and found him competent to enter into a plea agreement.[35] Mr. Douglas swore he graduated from high school and had read his plea agreement.[36] Mr. Douglas understood he waived his right to appeal his

conviction and sentence, with the limited exception of filing a claim for ineffective assistance of counsel.[37] Mr. Douglas swore he entered his guilty plea voluntarily.[38]

The record confirms Mr. Douglas knowingly and voluntarily waived his right to raise this claim against the Court itself through a section 2255 petition.

### 2. There is no miscarriage of justice.

Our holding Mr. Douglas to his knowing and voluntary waiver does not result in a miscarriage of justice. "The miscarriage of justice exception is meant to be 'applied sparingly and without undue generosity.'"[39] In assessing whether a miscarriage of justice will occur, a court should consider the "clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result."[40]

Mr. Douglas alleges an error in the calculation of his criminal history points, but enforcing the waiver will not cause a miscarriage of justice because no error exists in the calculation. New Jersey police officers arrested Mr. Douglas on August 15, 2011 for possession of drugs with intent to distribute.[41] New Jersey police officers arrested Mr. Douglas again on September 7, 2011 for conspiracy to possess drugs with intent to distribute while he was out on bail.[42] The police arrested Mr. Douglas for a third time on October 31, 2011 for unlawful possession of a firearm while he was out on bail.[43] Mr. Douglas acquired three criminal history points for the offense committed on August 15, 2011, three points for the offense committed on September 7, 2011, and three points for the offense committed on October 31, 2011, totaling nine criminal history points for Mr. Douglas's criminal conduct in 2011.[44] Sentencing took place for all three offenses on the same day, April 27, 2012.[45] Mr. Douglas believes he should only take on three criminal history points

6

for his 2011 criminal activity due to the joint sentencings.[46] We are guided by the United States Sentencing Commission, including in the Guidelines in section 4A1.2(a)(2), "[p]rior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (*i.e.*, the defendant is arrested for the first offense prior to committing the second offense)."[47] Mr. Douglas's second offense occurred after his arrest for the first offense, and he committed the third offense after being arrested for the second offense.[48] Intervening arrests separated Mr. Douglas's offenses from one another, and as a result, each of the three offenses should be counted separately when calculating criminal history points.[49] We made no error. Mr. Douglas's proposed compilation of criminal history points would plainly contradict the United States Sentencing Guidelines.[50]

Mr. Douglas knowingly waived his right to challenge our use of his presentence investigation report and, even if he had not, we made no error. We deny Mr. Douglas's first ground for habeas relief.

### B. Mr. Douglas does not plead constitutionally ineffective assistance of counsel.

Mr. Douglas argues (1) his attorney did not object to presentence investigation report issues and did not ask for a downward departure; and (2) his attorney should have raised Amendment 829 of Section 5H1.1 of the United States Sentencing Commission's Guidelines as a reason to depart from the applicable sentencing guidelines.[51] The United States argues he does not meet the high bar for ineffective assistance.[52] We agree he does not.

We evaluate claims of ineffective assistance of counsel under the Supreme Court's two-prong test announced forty-one years ago in *Strickland v. Washington*.[53] The Supreme Court in *Strickland* recognized the Sixth Amendment's guarantee "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence" means defendants are entitled to be represented by an attorney who meets at least a minimal standard of

7

competence.[54] To succeed on an ineffective assistance claim, "the petitioner must demonstrate (1) that counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and (2) that the petitioner suffered prejudice as a result of the deficiency."[55] "Judicial scrutiny of counsel's performance must be highly deferential."[56]

The first prong, constitutional deficiency, "is necessarily linked to the practice and expectations of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'"[57] "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."[58]

Mr. Douglas argues (1) his attorney did not object to presentence investigation report issues and did not ask for a downward departure; and (2) his attorney should have raised Amendment 829 of Section 5H1.1 of the United States Sentencing Commission's Guidelines as a reason to depart from sentencing guidelines.

We deal with the first ground easily. We did not err in relying on the probation officer's accounting of Mr. Douglas's criminal history points in the presentence investigation report. Attorney Lin's decision to not object to the presentence investigation report or request a downward departure on this basis would have been baseless. Her decision to not raise a baseless objection is not ineffective assistance.

We can also address the second ground easily. In Sentencing Guidelines Amendment 829, also known as the "Youthful Individuals" amendment, the Sentencing Commission added the following policy statement to section 5H1.1 of the United States Sentencing Guidelines Manual:

> A downward departure also may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses. Certain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences,

8

substance use, lack of educational opportunities, and familial relationships. In addition, youthful individuals generally are more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop into young adulthood. Youthful individuals also are more amenable to rehabilitation.[59]

The Sentencing Commission set the amended version of section 5H1.1 to take effect on November 1, 2024.[60] We sentenced Mr. Douglas over six months before this effective date; we sentenced him on April 23, 2024. In Section 1B1.10(d) of the Guidelines, the Sentencing Commission lists the amendments the Commission has made retroactive.[61] The Commission did not list Amendment 829 in section 1B1.10(d).[62] Our colleagues agree "Amendment 829, therefore, is not retroactive."[63] Attorney Lin could not have advocated for a downward departure on the basis of Amendment 829 because it did not exist at the time of sentencing (and, even if she were aware of the amendment on the horizon, she could not have argued for its premature application to Mr. Douglas's case).

Mr. Douglas has not established deficient performance as to either ground. "In light of our conclusion that counsel's performance was not deficient, we need not reach the prejudice prong of the *Strickland* inquiry."[64]

### C. We decline to issue a certificate of appealability.[65]

Mr. Douglas requests a certificate of appealability in the event his section 2255 petition is denied. Congress in section 2253 provides "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255."[66] We may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."[67] A petitioner meets this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."[68]

9

Mr. Douglas does not demonstrate reasonable jurists would find the court's conviction and sentencing wrong. He raises baseless concerns, such as presentence investigation report issues and inaccurate criminal history calculations. Reasonable jurists could not disagree with our conclusion Mr. Douglas's claims are waived and not supported by the record.

## III.    Conclusion

We deny Mr. Douglas's petition. We find Mr. Douglas knowingly and voluntarily waived his right to ask us to vacate his November 2023 conviction and April 2024 sentence other than arguing ineffective assistance of counsel, so we may not vacate his considered sentence based on his waived and incorrect understanding of the Sentencing Guidelines. He also does not meet the standard required to successfully plead constitutionally ineffective assistance of counsel as to his remaining grounds. We further find no basis for a certificate of appealability or an evidentiary hearing.

---

[1] *New Jersey v. Douglas*, No. 11005670 (Super. Ct. of N.J., Camden Cnty. Apr. 27, 2012).

[2] *Id.*

[3] *New Jersey v. Douglas*, No. 11006015 (Super. Ct. of N.J., Camden Cnty. Apr. 27, 2012).

[4] *Id.*

[5] *New Jersey v. Douglas*, No. 11007419 (Super. Ct. of N.J., Camden Cnty. Apr. 27, 2012).

[6] *Id.*

[7] ECF 43 at 27.

[8] *Id.*

[9] ECF1; ECF 10, at *1.

[10] ECF 1; ECF 42, at *1–2.

[11] ECF 12.

[12] ECF 13.

[13] ECF 18.

[14] ECF 16.

[15] ECF 21; ECF 23.

[16] ECF 23 ¶ 16.

[17] *Id.*

[18] ECF 43 42:3–45:15.

[19] *Id.*

[20] *Id.*

[21] ECF 49.

[22] 28 U.S.C. § 2255(a).

[23] *United States v. Sotomayor*, 146 F. Supp. 3d 667, 668 (E.D. Pa. 2015).

[24] 28 U.S.C. § 2255(b).

[25] *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)) (cleaned up).

[26] *Hodge v. United States*, 554 F.3d 372, 378–79 (3d Cir. 2009).

[27] *United States v. Khattak*, 273 F.3d 557, 561 (3d Cir. 2001) (quoting *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995)).

[28] *United States v. Mitchell*, No. 15-21-6, 2017 WL 4838841, at *2 (E.D. Pa. Oct. 25, 2017) (citing *United States v. Mabry*, 536 F.3d 231, 236 (3d Cir. 2008)).

[29] *Wiles v. United States*, No. 17-5077, 2020 WL 5055627, at *3 (D.N.J. Aug. 27, 2020) (internal quotation marks and citations omitted).

[30] *United States v. Kastory*, No. 22-142, 2023 WL 5901646, at *3 (W.D. Pa. Sept. 11, 2023) (quoting *United States v. Williams*, No. 21-1752, 2022 WL 973737, at *1 (W.D. Pa. Mar. 31, 2022)).

[31] *United States v. Traumann*, No. 18-564, 2023 WL 2142660, at *2 (E.D. Pa. Feb. 21, 2023) (quoting *Mabry*, 536 F.3d at 237–38).

[32] *Mabry*, 536 F.3d at 238.

[33] ECF 23 ¶ 16.

[34] *Id.* ¶ 19.

[35] ECF 50 6:4–17:7, 41:1–24. "Before accepting a plea of guilty . . . the court must address the defendant personally in open court" and determine "the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." Fed. R. Crim. P. 11(b).

[36] ECF 50 7:20–24, 15:2–13.

[37] *Id.* 33:21–35:22.

[38] *Id.* 15:2–13, 35:15–22, 40:4–19, 41:1–7.

[39] *Traumann*, 2023 WL 2142660, at *3 (quoting *United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005)).

[40] *Id.* (quoting *Khattak*, 273 F.3d at 563).

[41] *Douglas*, No. 11005670.

[42] *Douglas*, No. 11006015.

[43] *Douglas*, No. 11007419.

[44] PSR at *10–11 (the PSR is not a public document and we refer to our internal final copy of the PSR reviewed by Mr. Douglas and his counsel).

[45] *Douglas*, No. 11005670; *Douglas*, No. 11006015; *Douglas*, No. 11007419.

[46] ECF 47 at 6.

[47] U.S. SENTENCING GUIDELINES MANUAL § 4A1.2(a)(2).

[48] PSR at *10–11.

[49] U.S. SENTENCING GUIDELINES MANUAL § 4A1.2(a)(2).

[50] *Id.*

[51] ECF 47.

[52] ECF 49.

[53] 466 U.S. 668 (1984).

[54] *Id.* at 685–87.

[55] *Blystone v. Horn*, 664 F.3d 397, 418 (3d Cir. 2011) (citing *Strickland*, 466 U.S. at 687).

[56] *Strickland*, 466 U.S. at 689.

12

[57] *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (quoting *Strickland*, 466 U.S. at 688).

[58] *Strickland*, 466 U.S. at 688.

[59] U.S. SENTENCING GUIDELINES MANUAL § 5H1.1.

[60] U.S. SENTENCING GUIDELINES MANUAL § 5H1.1, amend. 829 (2024), https://www.ussc.gov/guidelines/amendment/829.

[61] *United States v. Prophet*, 989 F.3d 231, 238 (3d Cir. 2021) ("[T]he Commission[ ] list[s] . . . retroactive amendments in § 1B1.10(d)[.]").

[62] U.S. SENTENCING GUIDELINES MANUAL § 1B1.10(d).

[63] *United States v. Green*, No. 23-79, 2025 WL 1220954, at *5 (D. Del. Apr. 28, 2025).

[64] *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 374 n.4 (3d Cir. 2002).

[65] Although Mr. Douglas did not request an evidentiary hearing, we find "[t]he record conclusively shows [he] is entitled to no relief" and "[n]o hearing is necessary to rule on this matter." *United States v. Maldonado*, No. 10-288, 2016 WL 4206371, at *6 (E.D. Pa. Aug. 9, 2016) (citing 28 U.S.C. § 2255(b)).

[66] 28 U.S.C. § 2253(c)(1)(B).

[67] *Id.* § 2253(c)(2).

[68] *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (cleaned up) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).